IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

STEVEN D. PRELUTSKY,

                    Plaintiff,

        v.                                          1:15-cv-628-WSD

GREATER GEORGIA LIFE
INSURANCE COMPANY,

                    Defendant.

## OPINION AND ORDER

This matter is before the Court on Defendant Greater Georgia Life Insurance Company's ("Defendant") Motion for Judgment on the Administrative Record [12] ("Defendant's Motion"). Also before the Court is Plaintiff Steven D. Prelustky's ("Plaintiff") Motion for Summary Judgment [16] ("Plaintiff's Motion").

## I.    BACKGROUND

Plaintiff brings this action seeking review, under the Employee Retirement Income Security Act of 1974 ("ERISA"), of Defendant's denial of long term disability ("LTD") benefits. Plaintiff, a 55 year-old man, was a partner with the law firm Hall, Booth, Smith PC ("Hall"). (Admin. R. [15] ("R.") 006, 030, 038). On March 10, 2014, while on a ski vacation in Aspen, Colorado, Plaintiff fell down a flight of stairs in a home where he was staying. (See R. 007). The fall

resulted in a traumatic brain injury requiring several brain surgeries and ultimately caused lasting brain damage, which prevented Plaintiff from returning to his employment at Hall.  (R. 105-107, 111-12).  Hall's long-term disability benefits plan (the "Plan") excludes disabilities caused by, resulting from, or relating to intoxication (the "Intoxication Exclusion").  The crux of the parties' disagreement is whether the record shows Plaintiff's fall was caused by, resulted from, or related to his purported intoxication, and thus whether the Plan's Intoxication Exclusion precludes LTD benefits.

A.    The LTD Plan

Plaintiff was a participant in Hall's LTD Plan.  (R. 038).  The Plan was provided through a group insurance policy insured by Defendant.  (R. 499-511).

The Plan's Intoxication Exclusion provides:

The Policy does not cover any disabilities or loss caused by, resulting from, or related to any of the following . . .

7.    Any accident, Injury or Illness caused by, resulting from, or related to Your being under the voluntary influence of any drug, narcotic, intoxicant or chemical, unless administered by or taken according to the advice of a Physician.

(R. 620).

Defendant is the Plan Administrator.  The Plan provides that Defendant "will make the final decision on claims for benefits under the Policy.  When

2

making a benefit determination, [Defendant] will have discretionary authority to interpret the terms and provisions of the Policy."  (R. 623).

    B.    Plaintiff's Injury and Treatment

    On March 10, 2014, Plaintiff fell down approximately twenty (20) stairs in a home where he was staying in Aspen, Colorado.  There were no witnesses to his fall.  Plaintiff was found after the fall by his son.  The amount of time between Plaintiff's fall and when his son found him is not known.  (R. 200, 397).  When emergency medical services arrived, Plaintiff did not have a pulse, and CPR was performed.  (R. 209, 397).  Plaintiff arrived at Aspen Valley Hospital at 9:33 p.m., and was intubated and diagnosed with bilateral subdural hematomas associated with a midline shift and skull fracture.  (R. 57, 397).

    At 9:51 p.m., a blood alcohol test was performed.  The test indicated Plaintiff's blood alcohol level was 281 mg/dL.  (R. 065).  The test records state: "These unconfirmed 'screening' results are to be used for medical purposes only. They are not intended for non-medical purposes (e.g. employment and/or legal testing)."  (R. 065).  On March 11, 2014, Plaintiff was transferred to St. Mary's Hospital in Grand Junction, Colorado, where a craniectomy was performed.  (R. 195, 209).

On April 2, 2014, Plaintiff was transferred to the Shepherd Center, a long-term rehabilitation facility in Atlanta, Georgia. (R. 210). Nine months after his injury, Shepherd Center records indicate Plaintiff had improved, but he was still unable to return to work due to continuing high-level cognitive deficits and word-finding problems. (R. 106, 385). As of December 23, 2014, Plaintiff was continuing to be monitored as an outpatient at the Shepherd Center. (R. 106).

C.    Administrative Process

On June 2, 2014, Plaintiff applied to Defendant for LTD benefits. (R. 006-007). At the time he applied, his symptoms included deficits in short term and long term memory, difficulty with processing information, moderate to severe aphasia and a lack of awareness of limitations. (R. 030). He suffered from problems with word retrieval and other social skills. (R. 030). His reasoning was affected and he lacked the ability to make decisions. (R. 030). He had to re-learn walking, and he was unable to drive. (R. 030, 032).

On June 25, 2014, Defendant issued Plaintiff a letter requesting a completed Attending Physician Statement, medical records from the date of the injury to the present, and a completed Activities of Daily Living Questionnaire. (R. 029).

On July 2, 2014, Defendant received Plaintiff's medical records from the Shepherd Center. A physical therapy discharge note by attending physician Payal

4

M. Fadia, M.D. stated:  "[a]lcohol abuse reported with a blood alcohol level of

0.25 at the time of his fall."  (R. 048).

On July 29, 2014, Defendant denied LTD benefits, citing the Intoxication

Exclusion and the blood test performed at Aspen Valley Hospital.  The letter

denying benefits stated:

> The hospital records indicate that you sustained a traumatic brain
> injury after falling down a flight of stairs.  Also noted in the records
> was that your blood alcohol level was 0.25 when tested at the hospital.
> For alcohol levels between 0.20 and 0.29, the following symptoms
> were documented by Alcohol's Effects from Virginia Tech and
> Federal Aviation Regulation (CFR) 91.17:  Alcohol and Flying.
>
> - Stupor
> - Loss of understanding
> - Impaired sensations
> - Possibility of falling
>   unconscious
> - Severe motor
>   impairment
> - Loss of consciousness
> - Memory blackout

(R. 117-18).

On July 31, 2014, Defendant received Plaintiff's medical records from

Aspen Valley Hospital.  (R. 055).  The records included the blood alcohol test

performed at 9:51 p.m. showing Plaintiff's blood alcohol level was 281 mg/dL.

(R. 065).  The records also contained a March 10, 2014, report by consulting

surgeon William Rodman, M.D., which included a diagnosis of "Intoxication

(blood alcohol 253).  (R. 072).

5

On December 8, 2014, Plaintiff appealed the denial of LTD benefits, arguing Defendant failed to properly investigate his claim, and thus did not meet its burden of proof to show the Intoxication Exclusion bars LTD benefits.  (R. 126-27).  In support of his appeal, Plaintiff produced an affidavit from Cynthia Cameron, the owner of the Aspen home.  Ms. Cameron stated that, prior to the fall, Plaintiff did not appear drunk.  (R. 153-54).  She stated it was her belief Plaintiff tripped over his ski pants, since he had removed his boots prior to the fall, but did not remove the long ski pants designed to cover his ski boots.  (R. 153-54).  Ms. Cameron did not personally witness Plaintiff's fall.  (See R. 153-54).  Plaintiff also argued the Plan was internally inconsistent, because it provided for mental health benefits due to alcoholism, while excluding disabilities caused by alcohol.  (R. 127).

In support of his appeal, Plaintiff also included his medical records from the Shepherd Center, Aspen Valley Hospital, and St. Mary's Hospital.  The Emergency Department notes from St. Mary's Hospital, dated March 11, 2014—the day after the fall—state under the heading "Final Impression":

1.  Traumatic subdural hematoma
2.  Skull fracture
3.  Alcohol intoxication
4.  Fall down stairs

(R. 203).  The consultation notes by David S. James, M.D. from that same day include, under the heading "Impression," the statement "Acute alcohol

intoxication," and, under the heading "Plan," "CIWA[1] protocol for alcohol intoxication."  (R. 237).  A document titled History and Physical Notes completed by Nurse Practitioner Tammy J. Chambers states:  "Patient status is Inpatient 53 year old attorney skiing in Aspen on family vacation.  Had drank heavily this evening; fall 20 carpeted steps with immediate LOC.  His son and family friends are present in ER."  (R. 207).

The medical records from the Shepherd Center include an April 3, 2014, dictation report by attending physician Dr. Bowman.  The report stated under the heading "Admitting Diagnoses," "[a]lcohol abuse (binge drinking) with a blood alcohol of 0.250 at the time of his fall."  (R. 144).  A May 15, 2014, report by Dr. Bowman stated under "Relevant History," "Psychiatric history is notable for binge drinking; he was intoxicated at the time of his fall.  His wife denied the patient used tobacco or illicit substances.  He has never received formal substance abuse treatment."  (R. 148).

In conducting its review of Plaintiff's appeal, Defendant forwarded his medical records to an independent physician, Richard E. Sall, M.D.  Based on his review of the medical records, Dr. Sall opined:

---

[1]        Clinical Institute Withdrawal Assessment for Alcohol.

> The claimant had a reported blood alcohol concentration of .281% on a specimen draw in the emergency room at Aspen Hospital.
>
> At 0.25% BAC, the individual needs assistance in walking, and experiences total mental confusion . . . .
>
> Considering all the facts and circumstances in this case, it is my medical opinion that the claimant was intoxicated at the time of admission to the hospital.

(R. 389).  Dr. Sall opined that, in his medical opinion, Plaintiff's blood alcohol level "contributed to his fall."  (R. 390).  He concluded that, "[c]onsidering all the facts and circumstances in this case, it is my medical opinion that the claimant was intoxicated at the time of admission to the hospital and the level of intoxication most probably contributed to the cause for falling down the steps."  (R. 391).

On January 23, 2015, Defendant sent a letter to Plaintiff's attorney upholding its denial of Plaintiff's claim for LTD benefits.  (R. 406-411).  In upholding its denial of benefits, Defendant relied on its "review of the claim information, the independent medical review findings, and the plan language," to find that Plaintiff's "disability was due to an accidental injury resulting from being under the influence of an intoxicant."  (R. 410).[2]

---

[2]    A separate evaluation of the medical records was performed by Nick DeFilippis, PhD.  Dr. DeFilippis determined that, given Plaintiff's continuing problems, he would not be able to function in his role as an attorney.  (R. 383-88, 386).  Defendant acknowledges that Plaintiff's ability to function in his role as an

D.   <u>Procedural History</u>

On March 3, 2015, Plaintiff filed his Complaint [1].  In it, he seeks review, under the ERISA, of Defendant's denial of LTD benefits.  Plaintiff also seeks attorneys' fees.

On September 28, 2015, Defendant filed its Motion.[3]  In it, Defendant argues that the Administrative Record shows that Plaintiff's injury was, at the very least, related to his being under the voluntary influence of alcohol at the time of his accident.  ([17.1] at 14).  It argues that, even if the Court finds Defendant's decision to deny benefits was "wrong," Defendant's denial of LTD benefits was based on reasonable grounds under the deferential arbitrary and capricious standard.  (<u>Id.</u> at 24).  Defendant also argues its decision was not "clouded by a conflict of interest."  (<u>Id.</u> at 25-27).  Defendant seeks judgment on the administrative record and dismissal of this action with prejudice.  (<u>Id.</u> at 27).

---

attorney at the time of his claim denial—and thus his disability at that time—is not at issue in this action.  ([12.1] at 8 n.3).

[3]      On October 13, 2015, Defendant filed its Motion for Leave to File Corrected Memorandum of Law in Support of Defendant's Motion for Judgment on the Administrative Record [17] ("Motion for Leave").  In it, Defendant corrects an error in its original memorandum of law.  Plaintiff did not oppose Defendant's Motion.  The Court grants Defendant's Motion for Leave, and considers Defendant's Corrected Memorandum of Law.

On September 28, 2015, Plaintiff filed his Motion.  In it, Plaintiff argues Defendant did not meet its burden to show Plaintiff's accident was caused by, resulted from, or was related to his being under the influence of any intoxicant.  He argues that "the only evidence that [Defendant] has is the blood alcohol test," and argues that the "mere presence of alcohol in [Plaintiff]'s blood is not enough for the [Intoxication E]xclusion to apply."  ([16.1] at 7).  Plaintiff seeks summary judgment in his favor and an award of LTD benefits.  (Id. at 12).

## II.   DISCUSSION

### A.   ERISA Standard

As an initial matter, the parties disagree whether a motion for judgment on the administrative record or a motion for summary judgment is the appropriate vehicle to seek the Court's review.  The parties also disagree as to the appropriate standard of review.  Plaintiff argues Defendant's Motion is subject to the requirements of Rule 52 of the Federal Rule of Civil Procedure, and Defendant argues Plaintiff's Rule 56(a) summary judgment motion seeks review under a standard that does not apply in ERISA actions.

The "standard of review [in the ERISA context] does not neatly fit under either Rule 52 or Rule 56, but is a specially fashioned rule designed to carry out Congress's intent under ERISA."  Wilkins v. Baptist Healthcare Sys., Inc.,

150 F.3d 609, 618 (6th Cir. 1998).  ERISA benefits denial cases place the district court as more of "an appellate tribunal than as a trial court."  See Curran v. Kemper Nat. Servs., Inc., No. 04-14097, 2005 WL 894840, at * 7 (11th Cir. 2005) (quoting Leahy v. Raytheon Co., 315 F.3d 11, 17-18 (1st Cir. 2002)). The court "does not take evidence, but, rather, evaluates the reasonableness of an administrative determination in light of the record compiled before the plan fiduciary."  Id.; see also Blankenship v. Metro. Life Ins. Co., 644 F.3d 1350, 1354 (11th Cir. 2011) (review of a plan administrator's denial of benefits is limited to consideration of the material available to the administrator at the time it made its decision).  Thus, there "may indeed be unresolved factual issues evident in the administrative record, but unless the administrator's decision was wrong, or arbitrary and capricious, these issues will not preclude summary judgment as they normally would."  Pinto v. Aetna Life Ins. Co., No. 09-01893, 2011 WL 536443, at *8 (M.D. Fla. Feb. 15, 2011).

As the First Circuit recently explained, "motions for summary judgment in [the ERISA] context are nothing more than vehicles for teeing up ERISA cases for decision on the administrative record."  Stephanie C. v. Blue Cross Blue Shield of Mass. HMO Blue, Inc., 813 F.3d 420, 425 n.2 (1st Cir. 2016); see also Turner v. Am. Airlines, Inc., No. 10-80623, 2011 WL 1542078, at *4 (S.D. Fla.

Apr. 21, 2011) ("[W]here . . . the decision to grant or deny benefits is reviewed for abuse of discretion, a motion for summary judgment is merely the conduit to bring the legal question before the district court and the usual tests of summary judgment, such as whether a genuine dispute of material fact exists, do not apply." (internal quotation marks omitted)).  This is a sound, common-sense description of the district courts' appellate-like function in evaluating administrative decisions in ERISA cases.  It is consistent with the Eleventh Circuit's review of district court cases reviewing the denial of ERISA benefits.  Accordingly, the Court conducts its review of the administrative record, taking into account the arguments presented by the parties in their respective motions.  See, e.g., Al-Abbas v. Metropolitan Life Ins. Co., 52 F. Supp. 3d 288, 294-96 (D. Mass. 2014) (on review of denial of ERISA benefits, where defendant moved for judgment on administrative record and plaintiff cross-moved for summary judgment, court considered the record in light of the parties' briefing to determine whether administrator's decision was reasonable).

Turning to the framework for district courts to use to review an ERISA plan administrator's decision, the Eleventh Circuit has provided the following six-step analytical process (the "<u>Williams</u> analysis"[4]):

> (1) Apply the de novo standard to determine whether the claim administrator's benefits-denial decision is "wrong"; if it is not, then end the inquiry and affirm the decision.

> (2) If the administrator's decision is in fact "de novo wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.

> (3) If the administrator's decision is "de novo wrong" and he was vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).

> (4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.

> (5) If there is no conflict, then end the inquiry and affirm the decision.

> (6) If there is a conflict, the conflict should merely be a factor for the court to take into account when determining whether an administrator's decision was arbitrary and capricious.

<u>Smith v. Pension Comm. of Johnson & Johnson</u>, 470 F. App'x 864, 866-67 (11th Cir. 2012) (citing <u>Blankenship</u>, 644 F.3d at 1355).

---

[4]     <u>Williams v. BellSouth Telecomms., Inc.</u>, 373 F.3d 1132 (11th Cir. 2004).

Under the first step, a decision is "wrong" if "the court disagrees with the administrator's decision."  Williams v. BellSouth Telecomm., Inc., 373 F.3d 1132, 1138 n. 8 (11th Cir. 2004) (overruled on other grounds).  The Court applies the terms of the plan to determine whether the administrator was "wrong" in denying benefits to the claimant.  Brannon v. BellSouth Telecomm., Inc., 318 F. App'x 767, 769 (11th Cir. 2009).

At step three, when conducting a review of an ERISA benefits denial under the arbitrary and capricious standard, the function of the court is to determine whether there was a reasonable basis for the decision, based upon the facts as known to the administrator at the time the decision was made.  Jett v. Blue Cross & Blue Shield of Ala., 890 F.2d 1137, 1139 (11th Cir. 1989).  Even if the benefit determination is *de novo* wrong, the role of the court is limited to an inquiry into whether there were "reasonable" grounds to support it.  Williams, 373 F.3d at 1138.  The Court thus limits its review to whether the plan administrator's benefits determination "was made rationally and in good faith—not whether it was right." Griffis v. Delta Family-Care Disability, 723 F.2d 822, 825 (11th Cir. 1984).  "The reviewing court will affirm merely if the administrator's decision is reasonable given the available evidence, even though the reviewing court might not have made the same decision if it had been the original decision-maker."  Burden

14

v. Reliastar Life Ins. Co., No. 1:12-CV-04392-WSD, 2014 WL 26090, at *5 (N.D. Ga. Jan. 2, 2014) (alterations omitted) (quoting Callough v. E.I. du Pont de Nemours & Co., 941 F. Supp. 1223, 1228 n.3 (N.D. Ga. 1996)).

A "reviewing court must take into account an administrative conflict when determining whether an administrator's decision was arbitrary and capricious, [but] the burden remains on the plaintiff to show the decision was arbitrary; it is not the defendant's burden to prove its decision was not tainted by self-interest."  Doyle v. Liberty Life Assur. Co. of Boston, 542 F.3d 1352, 1360 (11th Cir. 2008).

B.      Burden of Proof

"A plaintiff suing under [ERISA] bears the burden of proving his entitlement to contractual benefits.  But, if the insurer claims that a specific policy exclusion applies to deny the insured benefits, the insurer generally must prove the exclusion prevents coverage."  Horton v. Reliance Std. Life Ins. Co., 141 F.3d 1038, 1040 (11th Cir. 1998).

C.      Analysis

1.      Review of Defendant's Decision to Deny Benefits

The Court first conducts its *de novo* review to determine whether Defendant's decision to deny benefits was wrong.  Defendant concedes that Plaintiff was, during the time period covered by the Administrative Record,

disabled under the Plan.  Defendant acknowledges that whether Plaintiff is

currently disabled is not at issue in this case.  (See [12.1] at 8 n.3; [20] ¶ 11).

Defendant's position is that the Intoxication Exclusion precludes the payment of

LTD benefits to Plaintiff because the injury Plaintiff suffered is excluded by the

Intoxication Exclusion.  Defendant has the burden to show the Intoxication

Exclusion prevents coverage.  Reliance Std., 141 F.3d at 1040.

> The Intoxication Exclusion provides:
>
> The Policy does not cover any disabilities or loss caused by, resulting
> from, or related to any of the following . . .
>
> 7.       Any accident, Injury or Illness caused by, resulting from, or
> related to Your being under the voluntary influence of any drug,
> narcotic, intoxicant or chemical, unless administered by or taken
> according to the advice of a Physician.

(R. 620).

The parties agree the question here centers on whether Plaintiff was under

the voluntary influence of an intoxicant, in this case alcohol, when he was injured

initially.  The Court reviews the facts in the Administrative Record on this

intoxication issue.

At 9:51 p.m. on the night of the accident, a blood alcohol test was performed

at Aspen Valley Hospital.  The test indicated Plaintiff's blood alcohol level was

281 mg/dL.  (R. 065).  While the test records state "[t]hese unconfirmed

'screening' results are to be used for medical purposes only" and "[t]hey are not intended for non-medical purposes (e.g. employment and/or legal testing)," (R. 065), that Plaintiff was intoxicated during his accident is supported by other evidence of record.  A report titled "History and Physical Notes" completed by Nurse Practitioner Tammy J. Chambers at 1:36 a.m. the night of the accident records the following patient history and facts:  "Patient status is Inpatient 53 year old attorney skiing in Aspen on family vacation.  Had drank heavily this evening; fall 20 carpeted steps with immediate LOC.  His son and family friends are present in ER."  (R. 207).  While Plaintiff argues that Nurse Practitioner Chambers's notes are unclear whether Plaintiff's son and friends stated to her that Plaintiff had been drinking heavily, Plaintiff admits "it is likely that they may have."  ([18.1] at 4). Indeed, because Plaintiff was unresponsive at the time of the report and was unable to communicate with Nurse Practitioner Chambers, the reasonable inference is that Plaintiff's son and friends told Nurse Practitioner Chambers that Plaintiff was an attorney, that he was on a ski vacation, and that he had been drinking heavily.[5] The phrase "drinking heavily" is the kind of colloquial statement a friend or family

---

[5]      It is possible that Plaintiff's friends and son told Nurse Practitioner Chambers that Plaintiff was an attorney on a ski vacation, while she deduced herself, based on the blood alcohol test, that Plaintiff had been drinking heavily that night.

member would use, and it is the kind of history a health care professional would record in a patient record.  Though Ms. Cameron's affidavit states a personal opinion that Plaintiff did not appear intoxicated and a speculative conclusion that Plaintiff "probably slipped on his ski pants," (R. 153-54), it is reasonable to place more weight on the medical evidence and Nurse Practitioner Chambers's history and fact entry than on Ms. Cameron's affidavit, especially her unconfirmed speculation about the cause of the accident.  See Capone v. Aetna Life Ins. Co., 592 F.3d 1189, 1200 (11th Cir. 2010) ("Aetna is entitled to value the medical evidence over the affidavits of Zeh and Capone.").  The Court finds the evidence supports that Plaintiff was intoxicated at the time of his fall.

The Court next considers the Administrative Record to evaluate if the injury Plaintiff sustained in Aspen was caused by, resulted from, or was related to his being intoxicated.  In Capone, the plaintiff struck his head on the bottom of the ocean after diving off a dock in the Bahamas, resulting in the plaintiff's paralysis from the neck down.  Id. at 1192.  A blood serum test revealed the plaintiff's blood alcohol content was 0.244.  Id. at 1192-93.  Based on this test, Aetna denied his claim for benefits, citing the plan's alcohol exclusion, which provided:

No benefits are payable for a loss caused or contributed to by:

. . .

Use of alcohol, intoxicants, or drugs, except as prescribed by a physician.

An accident in which the blood alcohol level of the operator of a motor vehicle meets or exceeds the level at which intoxication would be presumed under the law of the State where the accident occurred shall be deemed to be caused by the use of alcohol.

Id. at 1200.  The plaintiff in Capone argued Aetna failed to adequately establish that alcohol contributed to his injury.  He supported his argument with an eyewitness affidavit signed by his coworker and friend, Kevin Zeh, who attested that both he and the plaintiff successfully dove from the dock prior to the accident, and that other guests were jumping and diving as well.  Zeh stated he did not see the plaintiff "acting inappropriately" or having "red eyes, slurred speech, or difficulty walking," immediately preceding the accident.  Id. at 1194.  Aetna, in response, relied on a learned medical treatise, which stated that someone with a blood alcohol content of .20 to .30 would exhibit the following behavior: "staggering, grossly impaired, drunk; may be lethargic and sleepy or hostile and aggressive."  Id.  The district court granted summary judgment in favor of Aetna, finding, at the first step of the Williams analysis, that Aetna's decision was not *de novo* wrong.

19

On appeal, the Eleventh Circuit reversed, finding that, where "there is no mandate in the policy that legal intoxication shall be deemed the cause of the accident," it is unreasonable to draw the inference—from toxicology tests alone—that intoxication caused or contributed to an injury.  See id. at 1200.  The Capone court, noting that the insurer has the burden to prove an intoxication exclusion applies, found that the insurer did not "conduct a reasonable investigation sufficient to show that Capone was not entitled to benefits.  There was no investigation regarding the series of events leading up to the dive or the intoxication level of the other divers."  Id.  The court rejected Aetna's claims that, because the plaintiff was intoxicated, "his judgment was necessarily impaired."  Id.

Here, the evidence supporting an inference of causation consists of:  (1) the blood alcohol test, (2) Dr. Sall's independent professional opinion that "[a]t 0.25% BAC, the individual needs assistance in walking, and experiences total mental confusion . . . ." and (3) Dr. Sall's opinion, based on his review of the medical evidence, that "the level of intoxication most probably contributed to the cause for falling down the steps."  (R. 391).  Plaintiff argues that, "[l]ike the insurer in Capone, [Defendant] merely relied on the blood test and supposition from the blood alcohol content level.  The Eleventh Circuit held that this level of investigation was inadequate to meet the burden of proof.  Since Capone is direct

precedent, this Court should reach the same result." ([18.1] at 10).  The Court

agrees.  The blood test and a list of physical symptoms expected at a certain blood

alcohol level are the type of evidence the Eleventh Circuit concluded was required

to be supplemented by a further investigation by the insurer to determine if the

plaintiff's intoxication resulted in a degradation of his physical and cognitive

abilities such that the causal link can reasonably be drawn between the injury and

intoxication.  The Court concludes that Defendant failed to conduct a sufficient

investigation that would allow the administrator to reasonably find a causal link

between Plaintiff's alcohol consumption and his fall.[6, 7]

---

[6]    Defendant argues that, unlike in <u>Capone</u>, Defendant engaged a reviewing
physician, Dr. Sall, to independently analyze whether Plaintiff's injury related to
his intoxication. ([12.1] at 20).  Dr. Sall's conclusions, however, were based on his
analysis of the blood alcohol test in the context of learned medical treatises opining
that certain physical symptoms are present at a 0.25% level.  This underlying
evidentiary support is the kind that was found insufficient by the Eleventh Circuit.
The Court is not persuaded that a medical expert, relying on the same type of
evidence deemed insufficient by our Circuit, renders, by virtue of his medical
expertise, that evidence sufficient.

[7]    Defendant also argues that, because there were no witnesses to Plaintiff's
injury, "there was no one [Defendant] could have interviewed who could have
provided information identifying the cause of the fall." ([12.1] at 21).  It concludes
its investigation was, under the circumstances of this case, reasonable. (<u>Id.</u>).  The
Court disagrees.  That Plaintiff's "son and family friends" likely indicated he had
"drank heavily this evening," (<u>Id.</u> at 22 (quoting R. 207)), supports that these
individuals could have provided information regarding Plaintiff's physical and
mental state immediately preceding the fall.  Such evidence would be highly
relevant to the causation inquiry, as would be the volume of alcohol consumed, the

Defendant seeks to distinguish <u>Capone</u> by arguing that the exclusion in <u>Capone</u> provided that "[n]o benefits are payable for a loss *caused or contributed to by* . . . [u]se of alcohol, intoxicants, or drugs, except as prescribed by a physician[,]" <u>Capone</u> 592 F.3d at 1200 (emphasis added), whereas the exclusion in the Plan is broader, excluding disabilities "caused by, resulting from, *or related to* Your being under the voluntary influence of any . . . intoxicant [,]" (R. 620 (emphasis added)).  ([12.1] at 20).  Defendant argues that "the standard [Defendant] must meet to prove that the alcohol exclusion applies is less stringent than the one at issue in <u>Capone</u>."  (<u>Id.</u>).  Defendant suggests that it is not required to show a causal link between Plaintiff's intoxication and his injury.  The Court disagrees.  While only "minimal" causation is required by the Plan's language, <u>see Horton v. Life Ins. Co. of N. Am.</u>, No. CIV.A. ELH-14-3, 2015 WL 1469196, at *18 (D. Md. Mar. 30, 2015), Defendant still is required to develop sufficient facts to show some causal link between Plaintiff's intoxication and his injury, in order to show the injury was "related to" the intoxication.

---

type of alcohol consumed and the time period over which it was consumed, whether Plaintiff was tired as a result of any physical activity he had undertaken that day, and whether he was wearing attire that might cause a fall—just to name some of the facts that logically could be investigated to evaluate the relationship between the intoxication and the fall.

In <u>Hastie v. J.C. Penney Life Ins. Co.</u>, 115 F.3d 895 (11th Cir. 1997), the insured died after his vehicle collided with a vehicle that had crossed into the insured's lane.  <u>Id.</u> at 896.  An autopsy revealed the insured's blood alcohol level was 0.254%.  <u>Id.</u>  "The death certificate listed 'multiple blunt traumatic injuries' as the immediate cause of death, 'motorcycle-motor vehicle accident' as the 'underlying cause' of death and 'acute alcohol intoxication' as a 'significant condition contributing to death but not resulting in the underlying cause.'"  <u>Id.</u> Based on an intoxication exclusion, the insurance company denied an application for accidental death benefits.  The exclusion provided that "[n]o benefit shall be paid for any loss . . . which is caused by or results from . . . an injury occurring while the Covered Person is intoxicated."  <u>Id.</u>  The insurer argued that, because the insured was intoxicated at the time of the accident, the exclusion precluded recovery of benefits.  <u>Id.</u> at 897.  The Eleventh Circuit rejected this argument, reversed the district court's entry of summary judgment in favor of the defendant, and remanded.  <u>Id.</u>  In rejecting the insurer's application of the exclusion, the court reasoned that "[t]he interpretation urged by [the insurer] . . . would even deny liability for the accidental death in an automobile collision of a person being transported in an ambulance simply on the ground that the victim of the accident was under sedation at that time.  Language in contracts, drawn by reasonable men,

23

should not be given an unreasonable construction." Id.  The Hastie court

concluded that some proof of a causal connection between the insured's

intoxication and his death was required.  Id. at 896-97.[8]

Here, under language broader than that considered in Hastie, Defendant is

required to present some evidence of causation.[9]  See id., see also Horton, 2015

WL 1469196, at *18 ("The text of the Policies does not provide that an insured is

automatically excluded from benefits solely on the basis of blood alcohol content.

To the contrary, under the language of the Policies there must be some evidence of

the role of alcohol in the loss, beyond the insured's intoxicated state, to establish

[8]     While the Hastie court construed the exclusion under Florida law, the same
reasoning applies here.  Issues related to ERISA contracts are governed by federal
common law.  See Buce v. Allianz Life Ins. Co., 247 F.3d 1133, 1142 (11th Cir.
2001) ("[W]hen a federal court construes an ERISA-regulated benefits plan, the
federal common law of ERISA supersedes state law."); Epolito v. Prudential Ins.
Co. of Am., 523 F. Supp. 2d 1329, 1333 (M.D. Fla. 2007) ("Because ERISA does
not contain a body of contract law to govern the interpretation and enforcement of
employee benefit plans, disputes over benefits are governed by federal common
law on the many matters not addressed by the statute.").  Other federal courts have
required some evidence of causation under various types of intoxication
exclusions.  See Horton, 2015 WL 1469196, at *20 (citing cases).
[9]     To the extent the term "related to" is ambiguous as to whether some
evidence of causation is required, the doctrine of contra proferentem applies
during the first step of the ERISA Review Framework.  See White v. Coca-Cola
Co., 542 F.3d 848, 857 (11th Cir. 2008).  This doctrine provides that ambiguities in
insurance contracts are resolved against the insurer.  Castleberry v. Goldome Cred.
Corp., 418 F.3d 1267, 1271 (11th Cir. 2005).  The Court notes, however, that, in
our Circuit, the doctrine does not apply beyond the first step of the Williams
analysis.  See White, 542 F.3d at 857.

the applicability of the exclusion.").  To read the Plan as requiring otherwise would

be unreasonable.[10]  The Court finds the evidence in the Administrative Record

does not support that Plaintiff's injury was caused by, resulted from, or was related

to his intoxication.

Other courts considering intoxication exclusions in the ERISA context have

similarly found that, "notwithstanding a minimal burden of proof and a deferential

standard of review, an insurer cannot merely rest upon blood alcohol level and a

generic list of alcohol's effects to establish a causative link between intoxication

and loss."  Horton, 2015 WL 1469196, at *20.  "This principle requiring an insurer

to meet its causation burden with evidence applies generally to various policy

exclusions."  Id. (examining intoxication exclusions in ERISA cases).  In

Ciberay v. L-3 Commc'ns Corp. Master Life & Acc. Death & Dismemberment Ins.

Plans, No. 3:12-CV-1218-GPC-MDD, 2013 WL 2481539, at *1 (S.D. Cal.

---

[10]      That Defendant must provide evidence of causation is further supported by
the fact that "[n]o circuit court considering drunk driving crashes has approved a
claims administrator's use of a per se rule in the context of ERISA accidental death
policies."  Firman v. Becon Constr. Co., 789 F. Supp. 2d 732, 745 (S.D. Tex.
2011), aff'd sub nom. Firman v. Life Ins. Co. of N. Am., 684 F.3d 533 (5th Cir.
2012) (declining to adopt a per se rule that all alcohol-related collisions are
non-accidental and therefore not covered under an insurance policy).  "[T]he same
rationale cautioning against adoption of a per se rule based solely on blood alcohol
level is apt here."  Horton, 2015 WL 1469196, at *29.

June 10, 2013), the plaintiff's husband died several days after "falling down a set of stairs while intoxicated." Id. at *1.  After the fall, his blood alcohol level was measured at 0.422%. Id. at *2.  The medical examiner initially listed his cause of death as "hypertensive cardiovascular disease, with the following other significant conditions: alcohol abuse, pelvic fractures, obesity, and diabetes mellitus." Id. at *3.  He listed the manner of death as an accident.  Id.  The medical examiner later amended the medical report to reflect that the cause of death was "complications following pelvic fractures, with the following other significant conditions: hypertensive cardiovascular disease, alcohol abuse, obesity, and diabetes mellitus." Id.  Other medical testing revealed "'a large massive pulmonary embolism . . . .'" Id.

The insurer denied the wife's claim for accidental death benefits based on the policy's intoxication exclusion, which precluded benefits for "'any loss caused in whole or in part by, or resulting in whole or in part from the following . . . the Insured Person being under the influence of drugs or intoxicants . . . .'" Id. at *1.  The insurer determined that, due to the 0.422% blood alcohol level, which can cause "ataxia, tremors, disorientation, disturbed equilibrium and up to unconsciousness, depressed respiration, and even death," the loss was not covered by the policy. Id. at *4 (internal quotation omitted).  The plaintiff conceded that

her husband was intoxicated when he fell, but argued that he did not die due to intoxication.  Id.

The parties filed cross motions for summary judgment.  The Ciberay court applied the deferential arbitrary and capricious review standard, and awarded summary judgment to the plaintiff.  In reaching this conclusion, the court emphasized the lack of evidence in the administrative record to establish causation, noting:

> The record lacks any clear indication that Mr. Ciberay exhibited any of the purportedly typical effects associated with a blood alcohol level of .422%, which, according to Defendant, include:  ataxia, tremors, disorientation, disturbed equilibrium, depressed respiration, unconsciousness, and death.  To the contrary, the record indicates Mr. Ciberay was able to move all four extremities on command, was alert and oriented, experienced pain on standing (implying he was able to stand), was breathing normally, was conscious, and was alive. Moreover, prior to his fall, Mr. Ciberay had been playing with his grandson in an upstairs room.  Thus, given the apparent contradiction of its generic list of typical effects with Mr. Ciberay's actual state at the time of his fall, the Court finds it was unreasonable for Defendant not to further investigate the cause of Mr. Ciberay's fall.

Id. at *8 n. 2.  The court continued:

> Other than a generic list of the typical effects associated with a blood alcohol level similar to that of Mr. Ciberay's at the time of his fall— which, importantly, appears to be entirely contradicted by Mr. Ciberay's activity before falling and by his disposition when paramedics arrived as set forth in Footnote 2 above—one may only speculate as to what actually caused Mr. Ciberay to fall.  The fall may have been, as Plaintiff posits, related to the type of footwear Mr. Ciberay was wearing (if any), the type of flooring on the stairs, the

fact that Mr. Ciberay was carrying dishes, or any combination of these and other factors.  In short, Defendant relies on the fact that Mr. Ciberay was intoxicated without sufficiently tying Mr. Ciberay's intoxication to his death.

Id. at *14.

Here, Defendant offers only a blood alcohol level test and a generic list of the typical effects associated with a blood alcohol level similar to Plaintiff's.  The record here also "lacks any clear indication that [Plaintiff] exhibited any of the purportedly typical effects associated with a blood alcohol level of [0.25%]."  Id. at 8 n.2.  Plaintiff has presented at least some evidence to support an alternate, plausible theory accounting for his fall.  After a thorough review of the Administrative Record and the relevant case law, the Court finds that "[m]ost cases interpreting intoxication exclusions in insurance contracts have involved a more distinct causal link between intoxication and [injury] than in the present case." Norvell v. Metro. Life Ins. Co., No. CV RDB-14-3662, 2015 WL 9311971, at *6 (D. Md. Dec. 23, 2015).  "At the end of the day, the parties offer [only] theories and speculation as to what actually occurred."  Horton, 2015 WL 1469196, at *26.[11]

---

[11]     The Court finds persuasive the Horton court's analysis of cases in which courts have found sufficient evidence of causation.  In Horton, the court conducted an exhaustive review of federal courts' treatments of causation with respect to

On its *de novo* review, the Court finds Defendant failed to meet its burden to show Plaintiff's injury was caused by, resulted from, or was related to his intoxication.  Accordingly, the Court finds Defendant's benefits-denial decision was "wrong" under the first step of the <u>Williams</u> analysis.

### 2.   Whether Reasonable Grounds Support Defendant's Denial

Having found Defendant's denial of LTD benefits was *de novo* wrong, the Court proceeds to the next steps of the <u>Williams</u> analysis.  The Plan provides that, "[w]hen making a benefit determination, [Defendant] will have discretionary

---

intoxication exclusions.  The majority of cases involve automobile accidents.  The <u>Horton</u> court concluded that, in those cases where courts found the insurer provided sufficient evidence of causation, the "courts generally relied on direct evidence of driver error to support causation or the absence of any evidence to support an alternative theory of causation."  2015 WL 1469196, at *25  (internal citations omitted); <u>see also</u> <u>Smith v. Liberty Life Ins. Co.</u>, 535 F.3d 308, 317 (5th Cir. 2008) (noting that the insured's vehicle veered off the road and collided into two trees); <u>Patrick v. Devon Health Servs., Inc.</u>, 828 F. Supp. 2d 781, 795-96 (E.D. Pa. 2011) ("This is not a situation in which Defendants simply presumed causation in light of the elevated BAC levels found in Plaintiff at the time of the accident. The facts of this accident, coupled with the documentary evidence, including a police report supported by eyewitnesses, EMS records, hospital records and the report from Dr. Cohn, all supported the finding that driving while intoxicated contributed to the happening of this accident.  Furthermore, there is no evidence, and Plaintiff has presented nothing, to suggest that something other than alcohol caused or contributed to the accident's occurrence." (footnote omitted)).  Here, Defendant does not present any direct evidence that alcohol caused or contributed to Plaintiff's fall, and there is at least minimal evidence supporting a plausible alternate theory of causation.

authority to interpret the terms and provisions of the Policy."  (R. 623).  Because the Plan vests Defendant with discretion in reviewing claims, step three of the Williams analysis applies.  Step three requires the Court to "determine whether 'reasonable' grounds supported [Defendant's decision] (hence, review [Defendant's] decision under the more deferential arbitrary and capricious standard)."  Blankenship, 644 F.3d at 1355.  This step requires the Court to determine whether there was a reasonable basis for the decision, based upon the facts as known to the administrator at the time the decision was made.  Jett, 890 F.2d at 1139.  A "reviewing court must take into account an administrative conflict when determining whether an administrator's decision was arbitrary and capricious, [but] the burden remains on the plaintiff to show the decision was arbitrary; it is not the defendant's burden to prove its decision was not tainted by self-interest."  Doyle, 542 F.3d at 1360.

In Capone, the Eleventh Circuit reversed and remanded the district court's determination at step one of the Williams analysis.  On remand, the district court applied step three of the Williams analysis.  Capone v. Aetna Life Ins. Co., No. 1:06-cv-3014-MHS (N.D. Ga. June 14, 2010) (ECF No. 101).  In doing so, the district court determined that, because the Eleventh Circuit found Aetna's decision

to deny benefits was based on an insufficient investigation and facts insufficient to show causation, Aetna's decision was arbitrary and capricious.  Id.

The Court finds that, because Defendant failed to perform an investigation sufficient to support that Plaintiff's disability was caused by, resulted from, or related to his intoxication, Defendant's decision to deny benefits was not supported by reasonable grounds.  In upholding its denial of benefits, Defendant relied on its "review of the claim information, the independent medical review findings, and the plan language," to find that Plaintiff's "disability was due to an accidental injury *resulting from* being under the influence of an intoxicant."  (R. 410 (emphasis added)).  For the reasons stated above, the record here does not support a causal link between Plaintiff's injury and his intoxication, and the Court finds Defendant's denial of LTD benefits thus was not supported by reasonable grounds.  Accordingly, Plaintiff's Motion is granted, and Defendant's decision denying Plaintiff's LTD benefits is reversed.[12, 13]

---

[12]     Because Defendant makes benefits determinations and also is responsible for paying benefits, a structural conflict of interest exists and step six must be addressed.  Blankenship, 644 F.3d at 1355.  Defendant's inherent structural conflict of interest supports, but is not determinative of, the Court's conclusion.  See Doyle, 542 F.3d at 1360; Blankenship, 644 F.3d at 1355-56 ("The presence of a structural conflict of interest—an unremarkable fact in today's marketplace—constitutes no license, in itself, for a court to enforce its own preferred *de novo* ruling about a benefits decision.").

### III.   CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendant Greater Georgia Life Insurance Company's Motion for Leave to File Corrected Memorandum of Law in Support of Defendant's Motion for Judgment on the Administrative Record [17] is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Judgment on the Administrative Record [12] is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff Steven D. Prelustky's Motion for Summary Judgment [16] is **GRANTED**.  Defendant's denial of Plaintiff's claim for benefits under the Plan is **REVERSED**.

---

[13]    The Court's conclusion at step three also is supported by the decisions of courts that, applying the deferential arbitrary and capricious review standard, have awarded summary judgment to plaintiffs under similar facts.  For instance, in <u>Ciberay</u>, after finding that a "generic list of the typical effects associated with a blood alcohol level similar to that of Mr. Ciberay's at the time of his fall" was "simply insufficient [] to reasonably conclude Mr. Ciberay's intoxication caused him to fall[,]" the court entered summary judgment in favor of plaintiff.  <u>Ciberay</u>, 2013 WL 2481539, at *13-14.

**SO ORDERED** this 8th day of August, 2016.


_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE